GETCHELL & MARTIN LUMBER AND MANUFACTURING COM-
PANY, Appellant, v. DES MOINES UNION RAILWAY
COMPANY.

Grant of Franchise to Lay Track in Street:    CONTRACT TO VACATE.
A city council granted a street railway the right to lay tracks
on public alleys and streets on payment for injuries to abutting

owners. An abutting owner consented to the construction of a side track by the company in a certain alley and waived all damages resulting therefrom; and the company agreed that, if it became necessary to close the alley in question, it would vacate its track. *Held*, that on the subsequent passing of an ordinance, with the consent of the abutting owners, that the alley should be vacated and granted to the use of a certain railroad, it became incumbent on the street railway to vacate the track.

*Appeal from Polk District Court.*—Hon. S. F. Prouty, Judge.

Tuesday, October 15, 1901.

Action to enjoin the use of a portion of an alley by defendant for any purpose other than a side track, and for specific performance of agreement to vacate. Decree granting first part of relief as prayed, and denying the last. Plaintiff appeals.—*Reversed.*

*Clark & McLaughlin* for appellant.

*Cummings, Hewitt & Wright* for appellee.

Ladd, J.—The plaintiff's property abuts the east and west alley between Cherry and Vine streets in the city of Des Moines. In 1881 the city granted to the defendant's assignor the right of way "to lay down a single or double track, with side tracks," etc., on this and other public alleys and streets, "upon the express condition that the injury to property abutting upon the streets and alleys upon which such railway track is proposed to be located or laid down shall be ascertained at the time and in the manner provided by the statute of this state." The defendant proposed to construct a side track near the south side of this alley, and on the 22d day of March, 1894, entered into an agreement with plaintiff containing these provisions: First, "The parties of the first part consent to the construction and operation of said track upon said alley, and near the south line

thereof, and waive all damages on account of the construction of said track and the operation of trains thereover." Fourth. "And it further agrees that, if at any time it becomes necessary to close Eighth street or the north and south alleys heretofore named, it will vacate said track, or so much thereof as the parties of the first part may require, upon thirty days' written notice of such requirement." The side track was accordingly placed in the alley, and has been used by the company until the present time. In 1897 the Chicago Great Western Railway Company proposed the erection of a freight house along the "north side of block four, adjacent to Cherry street," and made application to the city council "for the vacation of the north and south alley in the north half of block four (4), original town of Fort Des Moines, and of the north and south alley in the north half of block nine (9), Hoxie's addition,"—the very alleys mentioned in the above agreement. On condition that the east and west alley should be kept as well as formerly, plaintiff, with the other property owners, including defendant, signed a paper freely consenting "that the said parts of the alley named be so vacated and granted to the use of said Chicago Great Western Company." Subsequently an ordinance vacating said alleys was passed by the city council and duly approved, based on said application and consent. Thereafter the plaintiff, by written notice, demanded the removal of the side track within 30 days, and upon defendant's failure to comply this action was brought to compel it to do so. Other relief sought, having been granted, requires no attention.

Did the vacation of the alleys become "necessary," within the meaning of the contract? The answer to this inquiry depends largely upon the meaning to be accorded that word. It cannot be said that plaintiff's consent precluded the necessity of vacating, nor, on the other hand, that it was essential thereto. The city had the absolute power to vacate alleys, regardless of the wishes or acquiescence of abutting owners (section 751, Code; *McLachlan v. Town of*

*Gray,* 105 Iowa, 259), and to do so in order to allow their use for private purposes (*Dempsey v. City of Burlington,* 66 Iowa, 687; *City of Marshalltown v. Forney,* 61 Iowa, 578). But it is always presumed to act for the public good, and, in the absence of any showing to the contrary, in closing the alleys in the aid of the erection of the freight depot it will be assumed to have had in view the convenience and advantage of the citizens of Des Moines. In that sense the vacation was necessary, and in that sense of the word must have been used in the contract. The propriety or expediency of the vacation was exclusively for the determination of the city council, and when accomplished the presumption arose that it was found necessary (not absolutely but reasonably necessary) in carrying out the city's policy. The word is often employed as somewhat analogous to "expedient" or "appropriate." Thus, in *Stuyvesant v. Mayor,* etc., 7 Cow. 606, a statute authorized the corporation of the city of New York to make by-laws "for regulating, or, if they find it necessary, preventing, the interment of the dead" within the city; and it was held the necessity was not absolute, but, as employed, nearly synonymous with expediency, or what is necessary for the public good." A statute required a railroad company to construct farm crossings "when and where the same became necessary for the use of the proprietors of the land adjoining such railroad," and the word "necessary" was held, in *Chalcraft v. Railroad Co.,* 113 Ill. 88, to be equivalent to "reasonably convenient." Lord Jessel once declared that "necessary," in a covenant "to do the necessary repair," did not add to or take from its meaning. *Truscott v. Rock Boring Co.,* 20 Ch. Div. 251; 16 Am. & Eng. Enc. Law, 368. The correctness of our conclusion is apparent when we inquire, what else could have been intended? In what way was the closing to become necessary? For what purpose? Necessary to whom? How determined? It is evident that the form of expression refers to a time when the city shall conclude to close the alleys. It is not perceived what bearing plaintiff's consent can have in this

case. It was not essential to the closing of the alleys. It is not shown to have misled defendant in any way to its prejudice. It did not amount to a waiver of compliance with the contract on the part of defendant, nor has it any of the elements of an estoppel. We discover no tenable ground for defendant's refusal to remove its side track, and it will be required to do so within 90 days from the filing of this opinion.—REVERSED.