MERIWETHER v. BOARD OF DIRECTORS OF ST. FRANCIS LEVEE DISTRICT.

(Circuit Court of Appeals, Eighth Circuit. November 18, 1908.)

No. 2,775.

1. LEVEES (§ 15*)—CONSTRUCTION—MODE OF DOING WORK—"NECESSARY" ACTS.
In determining what is reasonably necessary in making a public improvement, and what the authorities having it in charge are therefore empowered to do, the word "necessary" is not to be construed as meaning indispensable, but includes whatever is appropriate and convenient to render the improvement effective.

[Ed. Note.—For other cases, see Levees, Cent. Dig. § 10; Dec. Dig. § 15.*
For other definitions, see Words and Phrases, vol. 5, pp. 4705–4710; vol. 8, p. 7729.]

2. LEVEES (§ 9*) — LEVEE DISTRICTS — DISCRETIONARY POWERS — REVIEW BY COURTS.
The board of directors of a levee district created for the purpose of constructing and maintaining a levee along the Mississippi to protect adjoining lands from overflow are necessarily vested with a wide discretion in the choice of means and methods, and, if they act in good faith and on reasonable grounds, their judgment cannot be set aside by the courts.

[Ed. Note.—For other cases, see Levees, Cent. Dig. § 18; Dec. Dig. § 9.*]

3. LEVEES (§ 19*)—DAMAGES FROM CONSTRUCTION—ADEQUATE REMEDY AT LAW.
Under the Constitution and statutes of Arkansas, an owner of land which is injured by overflow as the direct result of the building of a levee by a levee district in the exercise of the powers conferred upon it is given a full and complete remedy at law by the recovery of damages as for a taking of his property for a public use, and a federal court is without

---

jurisdiction to grant equitable relief, at least until his remedy at law has been proven inadequate.

[Ed. Note.—For other cases, see Levees, Cent. Dig. § 10; Dec. Dig. § 19.*]

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

In 1893 the Legislature of Arkansas established the St. Francis levee district, comprising eight counties in the eastern part of the state, to construct and maintain levees against the waters of the Mississippi river, and gave to it the corporate name of the Board of Directors of St. Francis Levee District. The directors were authorized to sue and be sued, to acquire property both by purchase and eminent domain, to determine the crown, height, slope, and grade of the levee, and to make all needful regulations, and do all acts in their opinion necessary to secure the levee district under their charge from overflow by the waters of the Mississippi. The complainant is the owner of a tract of land embracing about 500 acres, which is bounded on the east by the Mississippi river, and on the west by Fletcher bayou. It is alleged in the bill that this bayou is the natural course of drainage for the immediate district, and carries off all surface water which would otherwise accumulate upon the rear portion of the complainant's plantation, and empties the same into the Mississippi river a few miles below. In the month of October, 1901, the plaintiff granted to the defendant the right of way for the levee across the eastern portion of his land, and thereafter during the same year it was constructed over the land, and many miles to the southward, crossing the mouth of Fletcher bayou so as to completely dam it up. No complaint was made of the construction of the levee, but during the summer and fall of 1902, it is charged that, as a result of closing the bayou, a great quantity of water was accumulated on the western portion of plaintiff's plantation, causing more than 300 acres of his land to become a swamp, rendering it unfit for agricultural purposes to which it had theretofore been devoted, injuring pecan trees growing thereon, and rendering the remainder of the plantation unhealthy for human habitation. It is charged in the bill that the damming up of Fletcher bayou "in this way" was wholly unnecessary, and was not originally contemplated by the defendant. In 1902, after the effect of the levee had become manifest, the complainant presented the situation to the defendant, which thereupon promised to provide suitable drainage for carrying off the accumulation of water. It caused its engineer to make surveys and estimates of the cost of providing such drainage, and he reported that the cost would not greatly exceed the sum of $2,500. The defendant has, however, failed to construct the drainage, and prior to the bringing of suit refused to do so. The bill, upon the foregoing facts, asks judgment for damages already suffered, and a mandatory injunction requiring the defendant to drain said swamp. To this bill a demurrer was interposed, first, upon the ground that it did not state facts sufficient to entitle the plaintiff to any relief; and, second, that it shows on its face that the plaintiff has a full, complete, and adequate remedy at law. The demurrer was sustained upon the second ground, and the bill dismissed.

Rose, Hemingway, Cantrell & Loughborough and H. M. Meriwether, for appellant.

H. F. Roleson, for appellee.

Before HOOK and ADAMS, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge (after stating the facts as above). The appellant contends that the obstruction of Fletcher bayou, and the consequent accumulation of water upon his land, constitutes a nuisance

which he is entitled to have abated. This takes account only of his injury, and overlooks the powers of the defendant in carrying out an important public improvement. If the obstruction of Fletcher bayou is reasonably necessary in building the levee, then the taking or injury of plaintiff's property is not a nuisance, but falls within the power of eminent domain, and constitutes simply an appropriation of private property to a public use. For his damages the plaintiff would be entitled to compensation, but would not be entitled to an abatement or impairment of a great public improvement in order to conserve his private property. It would be wholly impracticable to leave openings in the levee for all the bayous and estuaries leading into the Mississippi river along its line. To determine when the benefits of a continuous levee would exceed the damage to private property from damming up such water courses was one of the subjects committed to the sound discretion of the defendant board. The plaintiff, therefore, is not entitled to the equitable relief which he asks if the obstruction of Fletcher bayou was reasonably necessary in building the levee. The term "necessary" in this connection should not be construed to mean "indispensable," but should be held to cover what is appropriate and convenient in carrying on the public improvement. Detroit Park Commissioners v. Moesta, 91 Mich. 149, 51 N. W. 903; N. J. Railroad Co. v. Hancock, 35 N. J. Law, 537. Municipal authorities under such circumstances must be vested with a wide discretion in the choice of means and methods. If they act in good faith and upon reasonable grounds, their judgment cannot be set aside by the courts, even though some better way be pointed out. The bill in this case alleges that the damming of Fletcher bayou was "wholly unnecessary." This, however, is simply to place the plaintiff's judgment over against the judgment of the defendant. No specific facts are alleged showing that the obstruction is unnecessary. Until such a showing is made, the court is bound by the presumption that the defendant has exercised a sound and honest discretion. The complainant asks the unusual remedy of a mandatory injunction. To justify the courts in awarding that remedy, his bill should contain a full and specific statement of facts from which it would appear either that the defendant had acted wantonly, or that there was no reasonable necessity for the doing of the acts complained of. The bill fails to make any such showing.

The Constitution and statutes of Arkansas require that full compensation be made for property taken or damaged for a public use. Section 2734 of Sanders & Hill's Digest of Arkansas Statutes further enacts that "whenever any corporation authorized by law to appropriate private property for its use, shall have entered upon and appropriated any property, real or personal, the owner of such property shall have the right to bring an action against such corporation in the circuit court of the county in which such property is situated, for damages for such appropriation"; and the measure of recovery is declared by the following section to be the same as that governing proceedings by corporations for the condemnation of property. The general statute of the state dealing with the subject of levees (section 4705) requires the jury to assess and award all damages that are sustained by reason of the levee.

On the showing made by the bill, these statutes furnish the plaintiff a full and complete remedy for his injuries. If his land has been overflowed or injured as a direct result of the building of the levee, that amounts to a "taking" or "injuring" within the meaning of the constitutional provision which protects private property from public use without compensation; and at common law, as well as under the express provision of the statute just quoted, the plaintiff could maintain an action for his damages though no direct proceeding had been taken to condemn the land by eminent domain. United States v. Lynah, 188 U. S. 445, 23 Sup. Ct. 349, 47 L. Ed. 539; Pumpelly v. Green Bay Co., 13 Wall. 166, 20 L. Ed. 557; Springfield, etc., R. R. Co. v. Rhea, 44 Ark. 258. Where such a remedy exists, it is adequate and exclusive. Ex parte Martin, 13 Ark. 198, 58 Am. Dec. 321. This is an instructive case, involving substantially the same questions as those presented by this appeal. The opinion contains a clear explanation by a court, familiar with the local situation, of the necessity of obstructing water courses in building effective levees, and the need of granting a wide discretion on that subject to boards having charge of such improvements. At that time neither the Constitution nor statutes of Arkansas provided for compensation for property thus taken or injured, and for that reason the plaintiff prevailed; but the court plainly declares that if the right to compensation had been secured, no equitable relief would have been granted. "If the acts of assembly for reclaiming the swamp lands provided for compensation to those whose property might be injured or taken for public use by the levees or drains contemplated by those acts, the parties now seeking relief could not be heard except to complain in respect of the due and just administration of the law awarding compensation." 13 Ark. 211, 58 Am. Dec. 321.

The bill leaves us in doubt whether the complainant asked that an opening be made in the levee, or an independent system of drainage constructed. If the latter was the relief sought, the court had no power to command such affirmative action by the defendant. Vicksburg v. Vicksburg Waterworks Co., 202 U. S. 453, 471, 26 Sup. Ct. 660, 50 L. Ed. 1102.

The bill avers that after full investigation the board of directors refused to adopt either of these suggested courses, but alleges no facts which impugn the wisdom or honesty of their judgment. The trial court was therefore right in holding that upon the face of the bill an action at law to recover damages for property taken or injured would be a complete redress of his wrongs. If, when he has established his right at law, it shall appear upon a full disclosure of the facts that equitable relief is necessary to afford him complete redress, he can then apply to equity upon a proper showing. We think, however, that the right of the complainant to resort not only to law but to equity, if need be, after he has established his right at law, should have been left entirely plain by the decree of the court below; and, in order to remove all possible doubt on that subject, the decree of the court below will be modified so as to read that the bill be dismissed for want of equity, but without prejudice to further proceedings. As so modified, the decree is affirmed, with costs in favor of the appellee.