**GRIER v. KENNAN, Sheriff.**

**No. 9439.**

Circuit Court of Appeals, Eighth Circuit.

Feb. 23, 1933.

John L. Gilmore, of St. Louis, Mo., for appellant.

C. J. Stattler, Asst. U. S. Atty., of St. Louis, Mo. (Louis H. Breuer, U. S. Atty., of Rolla, Mo., on the brief), for appellee.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

September 4, 1931, there was filed in the District Court for the Eastern District of Missouri, against appellant, a criminal information containing five counts. October 27, 1931, appellant entered her plea of guilty to counts 1 and 5 of said information, and the intermediate counts were dismissed. It was thereupon adjudged by the court that the said: "Addie Grier, make her fine to the United States of America by the payment of the sum of Two Hundred Fifty ($250.00) Dollars and that she stand committed thereunder to the Audrain County Jail at Mexico, Missouri, until said fine be paid;

"And as to and under the plea of guilty so entered as aforesaid by said defendant, Addie Grier, to the charge as contained in count five of the information herein against her, that as to and under the charge as contained therein, she the said defendant, Addie Grier, make her fine to the United States of America, by the payment of the sum of Five Hundred ($500.00) Dollars and that she stand separately committed thereunder to the Audrain County Jail at Mexico, Missouri, until the said fine be paid.

"And the United States Marshal in and for the Eastern Judicial District of Missouri is hereby directed to deliver the said defendant, Addie Grier, to the jailer of the said Audrain County Jail; said jailer to receive, keep, imprison and confine the said defendant, Addie Grier, under the aforesaid judgment and sentence until she shall have paid the separate fines so imposed against her as aforesaid or until discharged thereunder by due process of law."

A commitment was on the same day issued to the United States marshal of the district, and by him executed by delivering appellant to the keeper of the jail of Audrain county at Mexico, Mo., appellee herein. Appellee kept the appellant in his custody under said commitment, from October 27, 1931, to and including the 1st day of December, 1931, at which time she was released under bail, subject to the order of the district court. No-

vember 28, 1931, appellant made written application to a United States commissioner for the district wherein she was imprisoned for a hearing, under the provisions of section 641, 18 USCA, to inquire into her ability to pay the fines imposed. This application was refused by the commissioner on the ground that appellant had not been confined for the full period imposed by the court's judgment, and by the terms of the commitment issued thereunder, and that her application therefore was premature. December 1, 1931, appellant filed in the district court her petition for a writ of habeas corpus, alleging that her continued imprisonment and restraint were illegal, for the reason that, under the terms of section 641, supra, appellant was entitled to be discharged from custody after having been confined for a period of thirty days, solely for the nonpayment of the fines imposed upon her by said judgment, provided she could establish, before the United States commissioner, her inability to pay such fines, or fines and costs, in accordance with the terms of said section 641. Upon hearing, said writ of habeas corpus was quashed and appellant was remanded to the custody of respondent "until such time as she shall have served sixty days' imprisonment for the two fines assessed against her and shall otherwise have complied with the provisions of section 641, supra." Thereupon appellant's application to prosecute this appeal in forma pauperis was granted, and appellant was admitted to bail pending the disposition of her appeal in this court. The trial court accepted the issue presented by the action of the commissioner in refusing to hear the application of appellant under section 641, and sustained that action. In order that this question may be settled without unnecessary resort to further litigation, we find it advisable at the outset to review the action of the trial court upon this phase of the controversy. The decision on this point depends upon the construction to be given to said section 641, 18 USCA which reads in part as follows:

"*Discharge of Indigent Convicts.* When a poor convict, sentenced by any court of the United States to be imprisoned and pay a fine, or fine and cost, or to pay a fine, or fine and costs, has been confined in prison thirty days, solely for the nonpayment of such fine, or fine and costs, such convict may make application in writing to any commissioner of the United States court in the district where he is imprisoned setting forth his inability to pay such fine, or fine and costs, and after notice to the district attorney of the United States, who may appear, offer evidence, and

be heard, the commissioner shall proceed to hear and determine the matter."

■ If it appears to the commissioner that the applicant is unable to pay as in said section provided, discharge from custody follows, but this action does not satisfy the judgment for fine and costs which may be enforced by execution against the property of the defendant, if found, in like manner as judgments in civil cases are enforced. 18 USCA § 569. Careful search by court and counsel has failed to discover any case wherein the point here in issue has been presented. The Department of Justice reports that a very careful search of the files of the Senate and Congressional libraries has been made, but no committee report has been found on Senate Bill No. 473 of the Forty-Second Congress, which bill embodied what now constitutes section 641, title 18 USCA. Our efforts to obtain some possible expression of the Congressional understanding at the time this act was passed have been, therefore, unavailing, because it is evident that no report of hearings, which may have been had on this bill, was printed.

Both court and counsel for the government attach much significance to the fact that the act in terms applies to fine in the singular. It is pointed out that, if Congress had in mind to discharge any poor convict from any number of fines, by the serving of only one period of thirty days in jail, it would have been easy for the Congress to have said so, in clear and unambiguous language. The rule is invoked that, ordinarily, where the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, the courts are not permitted to search for its meaning beyond the terms of the statute itself, citing Caminetti v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, Ann. Cas. 1917B, 1168, and further that, "since this statute changed the rule at common law, it is to be strictly construed, and to be held to change the former rule only to the extent that the plain language in it imports."

■ It is conceded, however, by the government that "statutes are to be read in the light of attendant conditions and the state of the law existent at the time of their enactment." Feitler v. United States (C. C. A. 3) 34 F. (2d) 30, 33. The opinion in this case expresses the principle thus: "In the search for the legislative intention, which after all is the central and controlling consideration in every such problem, a court should look for and find, when possible, the problem which

Congress had in mind, Rodenbough v. United States (C. C. A. 3d) 25 F. (2d) 13, 57 A. L. R. 1091, consider the conditions with reference to the subject matter that existed at the time of the enactment, Holy Trinity Church v. United States, 143 U. S. 457, 12 S. Ct. 511, 36 S. Ct. 226; Northern Pacific R. Co. v. United States (C. C. A.) 213 F. 162, L. R. A. 1917A, 1198, and the causes that induced the enactment, including the policy of the government, Wisconsin Central Railroad Co. v. United States, 164 U. S. 190, 17 S. Ct. 45, 41 L. Ed. 399, and sometimes look into the history of the subject. Denn v. Reid, 10 Pet. 524, 9 L. Ed. 519; Stewart v. Kahn, 11 Wall. 493, 20 L. Ed. 176; Preston v. Browder, 1 Wheat. 115, 4 L. Ed. 50."

It is further conceded that "it is, in a proper case, a well-settled rule of construction that the singular may often import the plural as well." Indeed, the very first section of the Revised Statutes (USCA title 1, § 1) provides that "in determining the meaning of any Act or resolution of Congress, words importing the singular number may extend and be applied to several persons or things." Emanuel v. United States (C. C. A. 2) 196 F. 317, 320.

The paramount duty of the court in construing a statute is to ascertain and give effect to the legislative intent. That duty has been well expressed by Judge John F. Philips of this circuit in Rigney v. Plaster (C. C.) 88 F. 686, 689: "It is among the recognized canons of interpretation of statutes that the intention of a legislative act is often to be gathered from a view of every part of the statute, and the true intention should always prevail over the literal sense of the terms employed. 'When the expression of a statute is special or particular, but the reason is general, the expression should be deemed general; and the reason and intention of the lawgiver will control the strict letter of the law, when the latter would lead to palpable injustice, contradiction, and absurdity.' 1 Kent. Comm. p. 462. Again, a thing within the intention of the legislature in framing a statute is often as much within the statute as if it were within the letter. Riddick v. Walsh, 15 Mo. 519; Schultz v. [Pacific] Railroad Co., 36 Mo. 13; State [ex rel. Missouri Mut. Life Ins. Co.] v. King, 44 Mo. 283; In re Bomino's Estate, 83 Mo. 441."

So, in United States ex rel. Gottlieb v. Commissioner of Immigration (C. C. A. 2) 285 F. 295, it is held that "in construing statutes, it is the duty of the court to endeavor to ascertain the intention and policy of Congress in their enactment, and to make practical application of that intention to the facts of the case." A particular construction must not produce inequality and injustice if another and more reasonable interpretation is possible. Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969.

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence, and it will always be presumed that the legislature intended exceptions to its language, which would avoid results of this character." United States v. Kirby, 7 Wall. 482, 483, 19 L. Ed. 278.

The legislative intent must be determined from the act as a whole with especial regard to the circumstances surrounding the Legislature at the time of its enactment; and "remedial statutes will be liberally construed, to give effect to the humane purpose of the legislature." Camunas v. New York & P. R. S. S. Co. (C. C. A. 1) 260 F. 40. Rev. St. U. S. § 1042 (section 641, 18 USCA) is a remedial statute. United States v. Pratt (D. C.) 23 F. (2d) 333, 334.

The object and purpose of this legislation was to relieve poor convicts from the oppressive burden of indefinite periods of imprisonment to enforce the collection of fines and costs. It was intended thereby to place the collection of such judgments largely upon the same plane with judgments in civil cases; and to avoid in large degree the aspect of imprisonment for debt, long since abandoned in civil cases. The change in this respect from the rule at common law was fundamental, and should be so construed as to render effective the relief sought to be granted. Under the law as it existed prior to the enactment of section 1042, R. S. (18 USCA § 641), the person convicted would have to remain in confinement for nonpayment of fine until released at the pleasure of the court. United States v. Pratt (D. C.) 23 F. (2d) 333; 16 C. J. § 3221, p. 1368.

The trial court in the course of its memorandum opinion[1] characterizes as absurd "the contention that one found guilty of fifty crimes should be punished only to the same extent as if he had committed but a single offense"; and, again, if the object and intent of a fine for a crime is to punish the criminal "it is not consistent with that intent and object to so construe section 641, supra, as to mete out to one guilty and convicted of nu-

---

[1] Oral opinion not for publication.

merous finable crimes precisely the same punishment given to one guilty of a single crime." It would appear from these quotations that the learned trial judge fell into the misconception that the imprisonment for a period of thirty days inhered in, and was a part of, the punishment imposed, whereas "the punishment is the fine, and the committing to custody is only a means of its enforcement." 16 C. J. § 3221, p. 1368. As said by the Attorney General, in a letter furnished by counsel for the government, "that imprisonment is merely a means of a coercion to compel payment of the fine is well settled." The views of the Department of Justice are thus further expressed:

"Upon that principle, coupled with the knowledge that a defendant is ordinarily in no better position to pay at the end of sixty days than at the end of thirty days, the Department has uniformly advised that it regarded one thirty day period of imprisonment as satisfying the statute where committed fines constitute parts of sentences to the same type of institutions.

"Thus where a defendant is sentenced under each of several counts in an indictment, or upon each of several indictments to a penitentiary, one thirty day period is believed to fully satisfy the statute in respect of committed fines comprising parts of such sentences.

"Where, however, a defendant's sentences with committed fines are to different types of institutions, for example, penitentiary and jail, it is felt that imprisonment solely for non-payment of the fine must be undergone in each type of institution designated. Otherwise, one of the judgments would be ignored. A penitentiary sentence cannot be satisfied by jail service and, conversely, a jail sentence does not authorize confinement in a penitentiary."

We agree with the view of the department that one thirty-day period of imprisonment satisfies the statute where fines on different counts constitute parts of the sentence under one indictment or information, and commitments thereon run to the same type of institution. While, under some circumstances, the rule applicable to fines under one proceeding may apply equally to those imposed upon each of several indictments or informations, we are not prepared to hold that this would be true under all conditions. We prefer, therefore, to withhold judgment on this point and upon the situation where commitments upon fines are to different types of institutions until such cases arise and are more fully presented in the light of the attendant circumstances. However, this conclusion does not lead to a reversal of the judgment under consideration. Such disposition would discharge appellant from custody without making the showing required under section 641. It is apparent that appellant, in suing out a writ of habeas corpus, has mistaken her remedy. The commissioner refused to entertain her application for a discharge in forma pauperis. In our view she should have been permitted to make the required showing, upon which, and the making of the prescribed oath, her discharge from custody must depend. Obviously, then, her remedy should have been by mandamus in the District Court to compel the commissioner to discharge the function imposed upon him by title 18, section 641. It is to avoid unnecessary circuity that we have considered the case upon its ultimate merits.

It follows from what has been said that the judgment below must be affirmed, but with directions that appellant be permitted to make the showing prescribed in said section 641; and that, if it shall appear to the commissioner that appellant is unable to pay the fines, or fines and costs, assessed against her in cause No. 16377 of the District Court for the Eastern Division of the Eastern District of Missouri, and if she also fully satisfies all the requirements of said section 641, she shall be discharged from further custody in the premises, and from the bond given in lieu thereof. It is so ordered.