FLEMING, Administrator of the Wage and Hour Division, United States Department of Labor, v. A. B. KIRSCHBAUM CO.

No. 7733.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 8, 9, 1941.

Decided Dec. 17, 1941.

Writ of Certiorari Granted Mar. 2, 1942.

See 62 S.Ct. 800, 86 L.Ed. ——.

William Clarke Mason, (Sidney L. Krauss, Frederick H. Knight and Morgan, Lewis & Bockius, all of Philadelphia, on the brief), for appellant.

Abner Brodie, of Washington, D. C., (Gerard D. Reilly, Sol., Irving J. Levy, Asst. Sol., John M. Gallagher, Regional Atty., and Ernest N. Votaw, U. S. Department of Labor, Edward J. Fruchtman and Norman S. Altman, all of Washington, D. C., on the brief), for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by the defendant from a judgment of the District Court for the Eastern District of Pennsylvania, 38 F. Supp. 204, which enjoined it from violating Section 15(a) (2) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 215(a) (2).

The defendant is the owner of a six story building which it at one time occupied as a factory for the production of men's clothing. For the past nine years the defendant has done no manufacturing. It leases space in its building to tenants, a number of whom manufacture goods which are shipped in interstate commerce. The defendant employs, among others not herein involved, three elevator operators, two watchmen, three firemen, an engineer, a carpenter, a carpenter's helper and a porter. The court found that the defendant paid those employees at a rate less than that prescribed in Section 6 of the act, 29 U.S.C.A. § 206, and employed them for a number of hours in excess of that prescribed in Section 7, 29 U.S.C.A. § 207, without compensating them at the overtime rate therein prescribed. It concluded that this amounted to a violation of Section 15(a) (2) of the act and granted an injunction in accordance with the power conferred upon it by Section 17 of the act, 29 U.S.C.A. § 217.

The defendant's arguments in support of its appeal fall into two general divisions: First, that the wage and hour provisions of the act do not apply to any employees of employers such as this defendant who are not engaged in interstate commerce or in the production of goods for interstate commerce; and Second, that the defendant's employees are not entitled to the benefit of the wage and hour provisions of the act because they are not themselves engaged in interstate commerce or in the production of goods for interstate commerce and also because they are employees in a service establishment and therefore expressly excluded from the benefits of the act by Section 13(a) (2) thereof, 29 U.S.C.A. § 213(a) (2).

Few courts have dealt directly with the first point raised by the defendant and in those courts which have recognized it as a distinct problem the decisions have not been uniform. Representative of the cases holding that the application of the act is determined by the character of the employee's work is Hall v. Warren-Bradshaw Drilling Co., D.C. N.D.Tex.1941, 40 F.Supp. 272, and of the cases holding that it is determined by the nature of the employer's business as well as by the character of the employee's work is Killingbeck v. Garment Center Capitol, Inc., 1940, 259 App.Div. 691, 20 N.Y.S.2d 521. In our view neither the language used in Sections 6 and 7 nor the legislative history of those sections furnish any support for the position taken by the defendant that the coverage of the act is dependent upon the character of the employer's business. Section 6(a) reads: "Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce" wages at a specified rate. Here there is no limitation upon the universality of the class of employers based upon the nature of the employer's business. On the contrary the expression "every employer" is all embracing and includes within its scope employers

whose business is not in commerce[1] and who produce nothing for commerce.[2] It is the employee's work which must be in commerce or, in the alternative, in the production of goods for commerce. Equally clear and unambiguous is the language of Section 7(a) which reads: "No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce" for a workweek longer than the prescribed number of hours unless he pays the employee at a fixed overtime rate. The phrase "No employer" certainly may not logically be qualified as meaning "no employer who is engaged in commerce or in the production of goods for commerce" which is the construction urged by the defendant. The emphasis in both sections is clearly placed upon the nature of the employee's work.

That the phraseology used was deliberately chosen by Congress and aptly expresses its intention to make coverage dependent upon the work done by the employee and not upon the nature of the employer's business is indicated by the legislative history of the sections. The wage and hour sections of the bill as it had passed the Senate were amended by the House of Representatives so as to read: "every employer engaged in commerce in any industry affecting commerce shall * * * pay, each employee employed by him * * *" certain wages based upon a fixed minimum and "no employer engaged in commerce in any industry affecting commerce shall employ any of his employees * * *" in excess of certain maximum hours without paying overtime compensation.[3] It will be seen that under this amendment the wage and hour provisions of the act were to apply only if the employer was engaged in commerce in an industry affecting commerce. The Senate refused to accede to these House amendments, however, and a conference between the two houses ensued. The conference committee report which was thereafter adopted by both houses substituted for the prior text of the bill the language now embodied in the act. The statement of the House conferees made to the House of Representatives in explanation of the changes proposed by the conference report said, in this connection:

"Section 6 of the conference agreement provides for the establishment of minimum wages for employees engaged in commerce or in the production of goods for commerce. The House amendment provided for the establishment of minimum wages if the employer was engaged in commerce in any industry affecting commerce. * * *"

"Section 7 of the conference agreement provides for the establishment of maximum hours of employment for employees engaged in commerce or the production of goods for commerce. The House amendment provided for the establishment of maximum hours of employment if the employer was engaged in commerce in an industry affecting commerce. * * *"[4]

Nothing in Sections 2, 5 and 8 of the act justifies the conclusion that Congress meant other than it said in Sections 6 and 7. Section 2 expresses the policy of the act to be the elimination of substandard labor conditions in industries engaged in commerce or in the production of goods for commerce. Sections 6 and 7 embody the means chosen to accomplish this purpose, specifically, a statutory minimum standard of wages and maximum standard of hours without overtime wages for all those engaged as workers in commerce or in the production of goods for commerce. Sections 5 and 8, on the other hand, embody a device whereby Congress sought to provide through industry committees a flexible means to accelerate the time within which the minimum wage of 40 cents an hour which it deemed desirable could be made effective in whole industries engaged in commerce without causing serious economic dislocation in any such industry. We conclude that it was the intention of Congress to make the act applicable to all those who are employed in commerce or in the production of goods in commerce without regard to the nature of their employer's business and that

[1] The word "commerce" as used in the act is defined by Section 3(b) to mean trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof. 29 U.S.C.A. § 203 (b). It is used in the same sense in this opinion.

[2] When Congress intended to exclude from coverage on the basis of the employer's business it did so in express terms in Section 13(a) of the act and did not leave the matter to inference or conjecture.

[3] 82 Cong.Record (1938), pp. 7415, 7419.

[4] 75th Cong., 3d Sess., House Report No. 2738 to accompany S. 2475.

this intention was given apt expression in Sections 6 and 7 of the act.

■ The defendant takes the position that if the act is so construed it violates the Tenth Amendment to the Constitution. That amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." The power to regulate interstate and foreign commerce was delegated to the federal government by Article I, Section 8, clause 3 of the Constitution. The regulation by Congress through the Fair Labor Standards Act of 1938 of the wages and hours of those engaged in interstate commerce or in the production of goods for interstate commerce is a valid exercise of the commerce power. United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430. Whether the act seeks to regulate commerce by using a classification based upon the general character of the business of the industry by which individuals are employed or by a classification based upon the individual character of the work performed by each employee is a matter of statutory construction. Either is a permissible method of exercising the legislative power delegated to Congress by the commerce clause and accordingly does not encroach upon the powers reserved to the states.

■ The defendant next insists that, even if the coverage of the act is dependent upon the nature of the work done by each employee, the work of the employees involved in the present case is neither in commerce nor in the production of goods for commerce. It is quite obvious that the defendant's engineer, firemen, elevator operators, watchmen, carpenters and porter were not engaged in the production of goods for commerce in the sense that they had actual physical contact with the goods produced. The word "produced," however, was used in no such restricted sense in the act. It is defined at some length in Section 3(j), 29 U.S.C.A. § 203(j), with the obvious intention of giving it a broader meaning than the one which it has in ordinary usage. The statutory definition is:

" 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

Thus for the purposes of the act an employee is to be deemed engaged in the production of goods for commerce not only when he has direct physical contact with the goods, but also when he is employed in "any process or occupation necessary to the production thereof."

■ The question before us, therefore, comes down to whether the men with whom we are here concerned were engaged in an occupation necessary to the production of goods for commerce. We think they were. All the manufacturing tenants in the defendant's building need heat and light; most need elevators to carry men and material up to their respective floors in the building and to take finished product and men down; some need high pressure ("live") steam for pressing and shrinking the materials used by them in the clothing which they manufacture and some need direct electric current without which they cannot operate their machines. It is the work of the engineer and firemen employed by the defendant to produce the heat for the building, the high pressure steam for the pressing and shrinking, the electricity for light and power. It is the work of the elevator operators to carry the materials and finished manufactured product to and from the floors where manufacturing takes place. In each instance the work is so essential to the production of the tenants' goods that if the defendant were not to provide the services the tenants themselves would have had to provide them. The vital necessity to production of the services of elevator operators, engineers and firemen is vividly demonstrated by evidence presented by the plaintiff as to the effects of a strike of building maintenance workers in New York City in 1939. The strike arose out of a dispute concerning wages and hours. It was carried on during the first three days of February and during those three days production of the knitwear and ladies garments manufactured in the building almost came to a standstill. The effect upon shipments in and out of the building was equally drastic. In the case before us the evidence justifies the conclusion that the services of the eleva-

tor operators,[5] engineer and firemen were so necessary to the production by the defendant's tenants of goods for commerce as to be indispensable to that production. Although the services of the watchmen, carpenters and porter are not necessary in the sense of being indispensable they are necessary in that they are both convenient and appropriate to the maintenance of a building suitable for the manufacture of goods for commerce.[6]

Finally the defendant contends that its employees are not entitled to the benefits of the wage and hour provisions of the act because they are employed in a service establishment, the employees of which are expressly excluded from the benefits of the act by Section 13(a) (2) thereof. Section 13(a) (2) reads: "The provisions of sections 6[206] and 7[207] shall not apply with respect to * * * any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce." It is clear that to come within the exemption not only must the employees render service the greater part of which is in intrastate commerce but they must also be engaged in a "service establishment." The district court found that the employees here involved were not within the exemption because their employer did not operate a "service establishment" within the meaning of the act. We agree with the district court that the defendant's business is not a service establishment.[7] It may be conceded that the defendant's employees render service to the tenants but this service is merely incidental to the business of the defendant which is that of leasing space in its building rather than of selling service. The rendering of some service is incidental to most businesses but they are not thereby necessarily stamped as "service establishments." That term may not be given so broad a meaning since

it represents a special exception to the general coverage of the act. Fleming v. Hawkeye Pearl Button Co., 8 Cir., 1940, 113 F. 2d 52.

Had Congress intended the term "service establishments" to include all establishments rendering incidental service it would not have considered it necessary to make specific exemptions in the case of carriers by air, carriers by railway, trolley or motor bus, and telephone exchanges;[8] each of which classes of establishment undoubtedly renders incidental services. Examples of other similar establishments will readily come to mind. It is true that there may be merely a difference in degree between establishments primarily engaged in rendering service—which the act designates as "service establishments"—and those in which the rendering of service is incidental to some other activity. The line between the two types of business may in some cases be difficult to draw. We do not here attempt to draw it but merely decide that the defendant's business is not on the "service establishment" side of the line. In reaching our conclusion we have given weight to the fact that the exemption as to service establishments was added by the conference report to the exemption as to retail establishments already contained in subparagraph (2) of Section 13(a) of the bill. From this it is fair to infer that the type of establishment meant is that which has the ordinary characteristics of a retail establishment except that it sells services instead of goods. In other words it is an establishment the principal activity of which is to furnish service to the consuming public. Typical retail establishments are grocery stores, drug stores, hardware stores and clothing shops. In Wood v. Central Sand & Gravel Co., D.C. W.D.Tenn.1940, 33 F.Supp. 40, 47, the court suggested as illustrations of what Congress meant by service establishments "barber

---

[5] The elevator operators are also directly engaged in commerce, for although their activities take place entirely within the state they carry out one step in the actual transportation of the goods to points outside the state.

[6] "Necessary" has frequently been construed to mean "convenient" or "appropriate." McCulloch v. Maryland, 17 U. S. 316, 413, 4 Wheat. 316, 413, 4 L.Ed. 579; Legal Tender Cases, 110 U.S. 421, 440, 4 S.Ct. 122, 28 L.Ed. 204; Meriwether v. Board of Directors, 8 Cir., 1908, 165 F. 317, 319; Getchell & Martin Lumber & Mfg. Co. v. Des Moines

Union Ry. Co., 115 Iowa 734, 87 N.E. 670, 671; Brooks v. Chicago, W. & V. Coal Co., 234 Ill. 372, 84 N.E. 1028, 1031; Hutcheson v. Atherton, 44 N.M. 144, 99 P.2d 462, 467.

[7] In direct conflict with this conclusion and upon substantially identical facts is the ruling in Fleming v. Arsenal Bldg. Corporation, D.C.S.D.N.Y.1941, 38 F. Supp. 207. An excellent note upon this case appears in 41 Columbia Law Review 1260.

[8] Exempted by Section 13(a) (4), (9) and (11).

shops, beauty parlors, shoe-shining parlors, clothes pressing clubs, laundries, automobile repair shops." We think these illustrations apt. They embrace a class of establishments wholly different from that of the defendant. The conclusion to which we have come makes it unnecessary for us to decide whether the greater part of the service activities of the employees here involved is in intrastate commerce.

We conclude that the employees of the defendant to whom we have referred are entitled to the benefit of the wage and hour provisions of the act and that the defendant was properly enjoined from further violations thereof.

The judgment of the district court is affirmed.