WILLIAM J. HEWLETT, Plaintiff, *v.* DEL BALSO CONSTRUCTION CORPORATION et al., Defendants.

City Court of New York, Trial Term, Queens County, February 2, 1943.

*Asher Zeide* for plaintiff.

*Max L. Rothenberg* for defendants.

WIENER, J. This is an action by the plaintiff to recover damages because of an alleged violation of the Fair Labor Standards Act of 1938 (U. S. Code, tit. 29, § 201 *et seq.*).

The defendant Del Balso & Sprague, Inc. (hereinafter called the defendant), is a domestic corporation which is engaged in the construction and repair of highways. It employed the plaintiff in connection with a contract which the defendant had theretofore entered into for the paving, draining and grading of a new arterial highway running east and west along the Rockaway Peninsula, and feeding into Cross Bay and Marine Parkway Bridges. Prior to the commencement of the work by the defendant, the Long Island Railroad Company had operated its tracks at grade in the area on which the defendant was to construct the new roadway. The railroad tracks had been elevated and this road was being built under the elevated structure.

In the course of the construction of this new road, the defendant's employees created holes or catch basins in the cross streets which ran north and south. These streets were kept open to traffic and connected, on both the north and south, with main, arterial highways. For the purpose of avoiding accidents, barricades were placed around these holes. Plaintiff's duties were to fill lamps each evening, to place them on the barricades, to warn traffic, to patrol the area all night to see that the lamps were lit, to see that no material was tampered with, and in the morning to remove the lamps from the barricades. The testimony shows that vehicles having license plates of States other than New York used these northbound and southbound streets during the period in question. On or about July 4, 1941, the new road was used by traffic although it was not formally dedicated until some time in October, 1941.

The plaintiff was employed from April 7, 1941, until October 6, 1941. From April 14, 1941, until October 6, 1941, the plaintiff worked seven days each week and continuously from 4:30 o'clock in the afternoon of each day until eight o'clock in the morning of the following day, at the salary of twenty-four dollars and fifty cents per week.

The Fair Labor Standards Act provides for a minimum hourly rate of thirty cents during the six years after the first year following the effective date of the Act, which was 120 days after June 25, 1938. (U. S. Code, tit. 29, § 206, subd. [a], ¶ [2].)

Section 207 provides, in part, as follows: " (a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in production of goods for commerce   *   *   *   (3) for a workweek of longer than forty hours after the expiration of the second year from such date [effective date of this section], unless such employee receives compensation for his employment in excess of the hours

above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Section 216 provides, in part, as follows: "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damage. * * * The court in such actions shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

" The statute is remedial, with a humanitarian end in view. It is therefore entitled to a liberal construction. *Grier* v. *Kennan*, 8 Cir., 64 F. 2d 605." (*Fleming* v. *Hawkey Pearl Button Co.*, 113 F. 2d 52.)

In the leading case of *United States* v. *Darby* (312 U. S. 100) the court said: " The power of Congress over interstate commerce is not confined to regulation of commerce among the states. It extends to those activities intrastate which so affect interstate commerce or the exercise of the power of Congress over it as to make regulation of them appropriate means to the attainment of a legitimate end, the exercise of the granted power of Congress to regulate interstate commerce."

The Administrator of the Wage and Hour Division of the United States Department of Labor in Interpretative Bulletin No. 5, published in October, 1940, states the following (p. 7): " Employees of contractors engaged in maintaining, repairing or reconstructing railroads, ships, highways, bridges, pipe lines, navigable waters of the United States, or other essential instrumentalities of interstate or foreign commerce would seem to be engaged in interstate commerce and subject to the act; and employees of contractors who are employed in maintaining, repairing, or reconstructing buildings or machinery used to produce goods for commerce would seem to be engaged in a ' process or occupation necessary to the production ' of such goods within section 3 (j) of the act and, therefore, within the coverage of the act."

" Such interpretations are entitled to great weight " (*United States* v. *American Trucking Associations*, 310 U. S. 534) and though not binding on this court, " the contemporaneous construction of those charged with the administration of the provisions of a new law is entitled to great respect." (*Bumpus* v. *Continental Baking Co.*, 124 F. 2d 549.)

Bearing in mind that the plaintiff was an employee of a contractor "engaged in maintaining, repairing or reconstructing * * * highways," it seems clear that the plaintiff comes within the protection of the Fair Labor Standards Act.

Mr. Justice CRAWFORD, in a well-considered opinion (*Atkocus v. Terker*, 30 N. Y. S. 2d 628), said in a case somewhat similar to this: "Considerable weight must also be given to the opinion of the United States Administrator of Wages and Hours, who in his interpretative bulletin of the Fair Labor Standards Act No. 5, published October, 1940, and more particularly page 7 thereof, wherein he declares, 'Employees of contractors engaged in maintaining, repairing or reconstructing * * * highways, bridges, navigable waters of the United States, or other essential instrumentalities of interstate or foreign commerce, would seem to be engaged in interstate commerce and subject to the Act.' See *United States v. American Trucking Association*, 310 U. S. 534, 540, 60 S. Ct. 1059, 84 L. Ed. 1345; also ROSENMAN, J., *Reck v. Zernocay*, Supreme Court, New York County, June 3, 1941."

The defendant leans heavily for support upon the case of *Pedersen v. Fitzgerald Construction Co.* (288 N. Y. 687). In that case the defendant was engaged in constructing *new abutments* under two bridges and in the repair of the substructure of two damaged bridges. The substructures were not used to support the superstructures of the bridges, *nor were they used in any way during the course of the work being performed by the defendant*. The Court of Appeals held that the employees of the defendant were not within the coverage of the Fair Labor Standards Act. The *Pedersen* case is distinguishable on the facts from this case. Here plaintiff's work was in connection with *existing highways in use*, whereas in the *Pedersen* case the abutments were not used until after the plaintiff had completed his work. Moreover, the *Pedersen* case has been impliedly overruled by the United States Supreme Court.

In the case of *Fleming v. Arsenal Building Corp.* (125 F. 2d 278) the Circuit Court of Appeals (L. HAND, C. J., writing) said: "We have found five decisions of appellate courts which have dealt with employees of an employer, who was not 'engaged in commerce,' or whom at least the courts treated as not so 'engaged.' So far the score is four to one against the view we take. In *Killingbeck v. Garment Center Capitol Inc.*, 259 App. Div. 691, 20 N. Y. S. 2d 521; *Robinson v. Massachusetts Mutual Life Insurance Co.*, Tenn. Sup., Nov. 29, 1941, 158 S. W.

2d 441; *Cecil* v. *Gradison,* Ohio App. 1st Dist., Nov. 17, 1941, 40 N. E. 2d 958; and *Pedersen* v. *Fitzgerald Construction Co.,* 3rd Dept. Nov. 12, 1941, 262 App. Div. 665, 30 N. Y. S. 2d 989, it was held the act did not apply to employees who were assisting in the work of another employer, himself ' engaged in commerce.' It is true that in some of these it would have been something of a strain upon the word, ' production,' to say that the employees were ' engaged in the production of goods ' at all; but it is doubtful that the courts meant to rely upon any such distinction, and it is for this reason that we count them against our view. On the other hand the Third Circuit in *Fleming* v. *Kirschbaum Co.,* 124 F. 2d 567, agrees with us and indeed in one or two matters went further than we have found it necessary as yet to go. In the district courts, *Farr* v. *Smith Detective A. & N. W. Service Inc.,* 38 F. Supp. 105, went off upon the fact that the ancillary services to the employer engaged in interstate commerce were occasional; but *Allen* v. *Moe,* 39 F. Supp. 5, must be counted with *Fleming* v. *Kirschbaum Co.,* though it is not on all fours. Obviously the question will not be set at rest until the Supreme Court makes an authoritative ruling.''

The cases of *Fleming* v. *Arsenal Building Corp.* (*supra*) and *Fleming* v. *Kirschbaum Co.* (124 F. 2d 567), cited in the *Arsenal* case, were both affirmed by the United States Supreme Court in the case of *Kirschbaum Co.* v. *Walling* (316 U. S. 517).

In note I, Mr. Justice FRANKFURTER, who wrote the prevailing opinion in the case of *Kirschbaum Co.* v. *Walling* (*supra*), specifically directed his attention to a comparison between the decisions under review and the opposite decisions in the cases of *Warren-Bradshaw Drilling Co.* v. *Hall* (124 F. 2d 42) ; *Killingbeck* v. *Garment Center Capitol, Inc.* (259 App. Div. 691) ; *Robinson* v. *Massachusetts Mut. Life Ins. Co.* (158 S. W. 2d 441 [Tenn.] ; *Cecil* v. *Gradison* (40 N. E. 2d 958 [Ohio App.]) ; *Pedersen* v. *Fitzgerald Constr. Co.* (262 App. Div. 665, affd. 288 N. Y. 687). The latter case can not therefore be deemed controlling here.

The court accordingly holds that the plaintiff was an employee who was engaged in commerce or in the production of goods for commerce and is entitled to the benefits of the Fair Labor Standards Act. Further support for the conclusion here reached may be found in the recent decision of the Supreme Court of the United States in *Warren-Bradshaw Drilling Co.* v. *Hall* (317 U. S. 88).

Moreover, it is now well settled that the mere fact that the plaintiff was a watchman does not exclude him from the benefits

of the Fair Labor Standards Act. (*Atkocus* v. *Terker, supra*; *Kirschbaum Co.* v. *Walling, supra; Lorenzetti* v. *American Trust Co.,* 45 F. Supp. 128; *Holland* v. *Amoskeag Mach. Co.,* 44 F. Supp. 884; *Killingbeck* v. *Garment Center Capitol, Inc., supra.*)

The evidence shows that the plaintiff worked 68½ overtime hours each week from April 14, 1941, to October 6, 1941. The evidence further indicates that during the period in question plaintiff received twenty-four dollars and fifty cents for a workweek totaling 108½ hours.

In effect, therefore, plaintiff was paid less than the statutory minimum of thirty cents per hour for the first 40 hours of weekly services. I have therefore deducted from the weekly wage of twenty-four dollars and fifty cents paid plaintiff the sum of twelve dollars which is applicable to the first 40 hours of his employment each week. This leaves then a balance of twelve dollars and fifty cents to be applied to plaintiff's overtime compensation which is to be computed at the rate of forty-five cents per hour. Since the plaintiff worked 68½ hours overtime for each week from April 14, 1941, to October 6, 1941, he is entitled to receive overtime compensation of $770.63. From this total there must, however, be deducted twelve dollars and fifty cents for each week because as above indicated plaintiff did receive that amount of compensation for the overtime put in by him. The period from April 14, 1941, to October 6, 1941, totals twenty-five weeks which, at twelve dollars and fifty cents per week, gives us a credit to which the defendant is entitled in the sum of $312.50. By deducting this $312.50 from the $770.63 total overtime to which the plaintiff is entitled, I arrive at the balance of $458.13 due to the plaintiff for overtime. I accordingly direct judgment in plaintiff's favor against defendant Del Balso & Sprague, Inc. as follows: (a) for overtime wages $458.13; (b) for liquidated damages pursuant to the Act (*Schneider* v. *Sports Vogue,* 35 N. Y. S. 2d 341) in the sum of $458.13; (c) for counsel fees $350; making a total in all of $1,266.26.

I further direct judgment dismissing the complaint herein against the defendant Del Balso Construction Corp. since it appears from the proof upon the trial that it was not plaintiff's employer during the period here in question.