**BROWNING et al.**

v.

**MAX BIEDERMAN, Inc.**

**ALLEN v. MAX BIEDERMAN, Inc.**

**Civ. Nos. 700, 704.**

United States District Court,
S. D. West Virginia.

April 6, 1954.

Edward H. Greene and Claude M. Morgan, Huntington, W. Va., for plaintiffs.

Harper G. Grimm, Charleston, W. Va., Tom T. Baker, Huntington, W. Va., for defendant.

WILKIN, District Judge (by designation).

This case came on for hearing and was submitted on the pleadings, stipulation of facts, statements and argument of counsel, and pre-trial briefs.

The pre-trial order says:

"The only question at issue will be whether or not Max Biederman, Inc., is subject to Fair Labor Standards Act of 1938 as amended, and required to pay minimum wages and time and a half for overtime."

From the opening statements of counsel, it became quite clear that the defendant claimed exemption from the Fair Labor Standards Act, by virtue of Section 13(a) (2), Title 29 U.S.C.A. § 213 (a) (2), and that the plaintiffs claimed the benefits of the Act, by virtue of Sections 206 and 207. The plaintiffs contended that they were entitled to the benefits of the Act, because a substantial part of their work was servicing, repairing, and supplying of new parts to trucks engaged in interstate commerce; and that, therefore, the exemption provided for in Section 13(a) (2) did not apply.

The issue was clarified by the following exchange between the Court and counsel:

"The Court: Is there a dispute of fact as to whether or not this defendant is qualified to claim that exemption?

"Mr. Morgan: Yes, Your Honor, a very great dispute. I think that will be the crux of the case, as a matter of fact.

"The Court: Would the dispute turn greatly on what amount of dollar volume of business came from local sources and what amount came from sources in interstate commerce?

"Mr. Morgan: No, Your Honor. It is our position, briefly, that if the plaintiffs are engaged in a substantial portion of their time while working for Biederman, Inc., working upon trucks and trailers which are used in interstate commerce and thereby those workmen are assisting in the moving of goods in interstate commerce, that the exception just does not apply and does not reach those employees. That is our position in a nutshell.

\* \* \* \*

"The Court: I can see that you are in some agreement, and your disagreement is mostly a question of law, isn't it?

"Mr. Morgan: That's right. I think that is absolutely the question, Your Honor.

"The Court: Do you dispute the facts announced by Mr. Baker regarding the volume of business and the percentage that is intrastate and—

"Mr. Morgan (Interrupting): No, sir, Your Honor. As far as I know, we are not in a position to dispute that, because they have the figures, whereas we do not. We contend that, regardless of their figures, it has no bearing upon the case.

"Mr. Baker: Your Honor, in that connection, we have attached to our trial brief an exhibit which we propose to introduce, which will show the volume of business, wholesale and retail, and in and out of the state business.

"The Court: There is no dispute about that, then. They do not admit it, probably, but are not contesting

it. As I see it now, it is purely a question of law as to whether the exemption which you read applies to your client or whether, in spite of what you read, these men are entitled to the benefits of the Fair Labor Standards Act because they were engaged in work that affected the flow of interstate commerce.

"Mr. Morgan: I think that is the position exactly, Your Honor. * * * "

The language of Sections 206 and 207 is undoubtedly broad enough to cover the work done by plaintiffs on trucks engaged in interstate commerce, and if the Act said nothing more, such labor would be clearly within the purview and purpose of the Act. But Section 213(a) (2) provides:

"The provisions of sections 206 and 207 of this title shall not apply with respect to * * * any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry".

The Interpretative Bulletin, Section 779.6, issued by the Department of Labor, provides:

"Under section 13(a) (2) employees 'employed by' an 'establishment' are exempt from the minimum wage and overtime requirements of the Act if the establishment qualifies as an exempt retail or service establishment by meeting all of the following requirements:

"(1) The establishment must be engaged in making sales of goods or of services or of both.

"(2) The establishment's total annual dollar volume of sales of such goods (if it sells goods only) or of such services (if it sells services only) or of both (if it sells both goods and services) must meet the following tests:

"(i) At least 75 percent must be from sales of goods or services which are both (A) recognized as retail sales or services in the particular industry and (B) not for resale.

"(ii) More than 50 percent must be from sales of goods or services which are made within the State in which the establishment is located."

The facts submitted and undisputed disclose:

That the defendant is an automobile dealer who sells, services, and repairs automobiles at 4th Avenue and 4th Street, and at 1411 Route 60, in Huntington, West Virginia.

That a substantial amount of the work done by the plaintiffs was done on trucks and tractor trailers engaged in interstate commerce, but the amount of such work in dollar volume or in percentage could not be stated.

But at least 75% of the defendant's total annual dollar volume of sales of goods and services was in business which is recognized in the automobile business as retail sales and services, and such sales and services are not made for resale.

And that more than 50% of defendant's total annual dollar volume of such sales and such services was and is derived from sales and services which are made within the State of West Virginia.

A tabulation prepared by a public accountant, in support of defendant's contentions, was submitted with its pretrial brief.

The undisputed facts and figures bring the defendant clearly within the exemption granted in Section 13(a) (2).

In some of the cases relied on by the plaintiffs, the language quoted seems to support the plaintiffs' contentions, but those cases were decided prior to the

**316**

amendment of the Act (1949), as quoted above. In other cases, the specific exemption granted by Section 13(a) (2) was not claimed by the employer and, in other cases, the particular business of the employer was held not to be within the provisions of Section 13(a) (2). In Fleming v. A. B. Kirschbaum Co., 3 Cir., 124 F.2d 567, water and electric companies were excepted. When the decisions are considered with reference to the facts of each case, they do not support the plaintiffs' contentions in this case. The decisions in the cases cited by the plaintiffs cannot overrule the express and definite provisions of the Statutes and Regulations as they are today.

Complaint dismissed at plaintiffs' costs.