## SCHMIDT v. PEOPLES TELEPHONE UNION OF MARYVILLE, MO.

### No. 12510.

Circuit Court of Appeals, Eighth Circuit.

Sept. 29, 1943.

Robert L. Jackson, of Kansas City, Mo. (Hale Houts, of Kansas City, Mo., on the brief; Hogsett, Trippe, Depping & Houts, of Kansas City, Mo., of counsel), for appellant.

L. L. Livengood and Livengood & Weightman, all of Maryville, Mo., for appellee.

Before THOMAS and JOHNSEN, Circuit Judges, and VOGEL, District Judge.

VOGEL, District Judge.

This is an appeal from a judgment in favor of the appellee in a suit based on the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219. For the purpose of convenience the appellant shall be designated as the employee and the appellee as the employer.

The employer, Peoples Telephone Union of Maryville, Missouri, is a voluntary association of individuals maintaining a telephone service primarily for the individuals who are members of the association. The association was not incorporated during any of the time referred to in the complaint. The employer had approximately eleven hundred subscribers. It was permitted to a subscriber of the employer, in consideration of the amount charged him by the employer, to talk without additional cost to other subscribers, also members of the association, and to talk without additional cost to any subscriber of similar associations in a number of towns in the vicinity of Maryville, Missouri, which is the headquarters of the employer. Among these towns are six which are within the State of Iowa, near the Missouri-Iowa line. The employer, in its telephone book furnished to its subscribers, advertised "Free service to the following towns". Thereafter were listed the towns in Missouri to which free service was given, and also six towns in Iowa to which free service was given. Any subscriber of the employer could talk without additional charge to a subscriber of some one of these similar associations in Iowa, in the six towns referred to. During the period covered by the complaint it was the practice of the employer to make a charge of ten cents to any person not a subscriber who used the facilities of the employer in talking to any other town, including the towns in Iowa.

The employee and those for whom she has instituted the present suit are switchboard operators employed by the employer in its general office in Maryville, Missouri. Their duties consisted of switchboard operation in handling calls made by the employer's subscribers and by non-subscribers for the ten cent charge. Their duties included receiving calls from any one of the six towns in Iowa for Maryville, Missouri, or the surrounding territory, and also handling calls from the Maryville, Missouri, territory to any one of the said towns in Iowa. The handling of such interstate calls was a regular course of business of the employee and those for whose benefit the present suit was instituted.

After filing its answer the employer moved the District Court to render judgment on the pleadings against the employee, making such motion upon the ground that the Court lacked jurisdiction, the employer being a voluntary cooperative or mutual association which, under the laws of the State of Missouri, could not be sued or summoned as an entity. The District Court properly over-ruled the motion on the ground that if, by an act of Congress, the employer was a suable entity, then it was a matter of no concern whether in the state courts of Missouri the employer might sue or be sued. In connection therewith we call attention to Rule 17(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c: "(b) Capacity to Sue or Be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held; *except that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States."* (Italics supplied.) See also the opinion of Mr. Chief Justice Taft in United Mine Workers of America et al. v. Coronado Coal Co. et al., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762; also, National Association of Industrial Insurance Agents v. Committee for Industrial Organization, et al., D.C., 25 F.Supp. 540. The District Court was correct in over-ruling the employer's motion.

The main problem in the case is whether the employee and those for whom she has instituted the present suit were shown to be engaged in interstate commerce within the purview of the Fair Labor Standards Act, and, if so, whether any of the exemptions provided for in the Act were so applicable as to exclude coverage therefor.

The District Court was of the opinion that the Fair Labor Standards Act was not intended to cover such situation as is disclosed by the evidence and findings herein. Accordingly, it gave judgment for the employer.

The District Court appears to have based its decision upon the amount or percentage of revenue derived by the employer from interstate calls and upon the small number of interstate calls handled, although the latter is by no means clear from the evidence and no specific finding was made thereon except that the number of such calls was "trifling".

■ The test here is not the amount of revenue derived by the employer from interstate calls nor the number of such calls in interstate commerce. We are not dealing with a situation where some inconsequential incident of interstate commerce happens to result from the general conduct of a fundamentally intrastate business. Here, the employer offered a continuous service to and from six towns in a state other than the state wherein its exchange was located. The employer admittedly was immediately and directly engaged in interstate commerce and held itself out as furnishing interstate communication service both to its subscribers and to the general public. The nature of the employer's business here was such, by virtue of its being engaged directly and immediately in interstate commerce, that the employees, whose duty it was to handle such interstate communications, were clearly within the express language used by Congress in the Act and are covered, unless there is some specific exemption therefor.

■ We are also of the opinion that Congress clearly intended to include the employees of telephone companies where the latter were actual instrumentalities and channels of interstate commerce. Such view is supported by Interpretative Bulletin No. 1, issued by the Wages and Hours Division of the United States Department of Labor: "The first category of workers included, those 'engaged in (interstate) commerce,' applies, typically but not exclusively, to employees in the telephone, telegraph, radio, and transportation industries, since these industries serve as the actual instrumentalities and channels of interstate commerce. Employees who are an essential part of the stream of interstate commerce are also included in the phrase 'engaged in commerce'; for example, employees of a warehouse whose storage facilities are used in the interstate distribution of goods." Such view is further supported by the fact that Congress made specific exemptions from the Act of "any switchboard operator employed in a public telephone exchange which has less than five hundred stations". 29 U.S.C.A. § 213(a) (11). By such exemption Congress indicated the scope of the exemption as to the industry referred to.

We must next determine whether the employees involved here come within any of the exemptions provided in the Act. Only two of the exemption provisions require more than passing attention in the determination of this case. Such provisions are: "(a) The provisions of sections 206 and 207 of this title shall not apply with respect to * * * (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce; * * * "or (11) any switchboard operator employed in a public telephone exchange which has less than five hundred stations."

■■ There is some suggestion that the first exemption above quoted was somewhat relied upon by the District Court in its decision. Such exemption applies to employees of "any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce". We do not think that Congress in the term "service establishment" in its broad sense, which would include public utilities such as railroads, gas and electric companies, telephone and telegraph companies, and the like. In its narrower sense the term applies to an altogether different class of businesses, such as restaurants, hotels, laundries, garages, barber shops, beauty parlors, funeral homes, shoe-shining parlors, clothes pressing clubs, and the like. That the exemption clause to which we are now referring applies to the latter class of businesses is supported by Interpretative Bulletin No. 6, issued by the United States Department of Labor, Wage and Hour Division, in June, 1941, and also by the following: Stucker v. Roselle, D.C.Ky., 37 F.Supp. 864, 867; Fleming v. A. B. Kirschbaum Co., 3 Cir., 124 F.2d 567, 572, affirmed sub nomine Kirschbaum Co. v. Walling, 316 U.S. 517, 526, 62 S.Ct. 1116, 86 L.Ed. 1638; Wood v. Central Sand & Gravel Co., D.C.Tenn. 33 F.Supp. 40, 46; Lorenzetti v. American Trust Co., D.C.Cal., 45

F.Supp. 128, 138. In addition we are of the opinion that the fact that specific exemption is provided for certain switchboard operators of public telephone exchanges in the exemption contained in 29 U.S.C.A. § 213(a) (11) negatives the possibility that Congress may have intended "retail or service establishment" as used in the exemption contained in 29 U.S.C.A. § 213(a) (2) to include public telephone exchanges. The fact that specific exemption has been provided is strongly indicative that Congress did not regard a telephone company as being a "service establishment" within the exemption contained in 29 U.S.C.A. § 213(a) (2). We conclude that such exemption does not apply as the employer is not such "retail or service establishment" as was contemplated by the Act.

We have already pointed out that the exemption contained in 29 U.S.C.A. § 213(a) (11) is not a bar to the applicability of the statute. The fact that the employer had eleven hundred subscribers, meaning eleven hundred phones or "stations", as referred to in the Act, clearly excludes its employees from the exemption referred to.

Accordingly, the judgment of the District Court is reversed, with instructions to enter judgment in favor of the employee for the amount agreed upon between the parties. In so doing we leave for further consideration of the District Court the fixing of reasonable attorneys' fees herein. There may be some additional work necessary and we feel the District Court may be better able to assess a fair fee for the entire service than we are at the present time.