### NEW MEXICO PUBLIC SERVICE CO. v. ENGEL.

### No. 2933.

Circuit Court of Appeals, Tenth Circuit.

Nov. 3, 1944.

Rehearing Denied Dec. 5, 1944.

---

[2] The smallness of the margin was doubtless the reason the broker asked for the guaranty.

A. K. Montgomery, of Santa Fe, N. M., for appellant.

Melvin D. Rueckhaus, of Albuquerque, N. M. (Arthur Livingston and Louis Rubenstein, both of Santa Fe, N. M., and Harry D. Robins, of Albuquerque, N. M., on the brief), for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

George Engel brought this suit against his employer, New Mexico Public Service Company, to recover overtime compensation, liquidated damages, and attorney's fee, as provided by Sections 6, 7 and 16(b) of the Fair Labor Standards Act of 1938, 52 Stat. 1060–1069, 29 U.S.C.A. §§ 201–209. The employer denied liability, contending that the employee was not within the coverage of the Act because not "engaged in commerce or in the production of goods for commerce," and in the alternative that it was a retail or service establishment within the meaning of Section 13(a) (2) of the Act, and therefore exempted from its coverage. Based upon stipulated facts, the trial court held that the employee was "engaged in commerce" but not in the production of goods for commerce within the meaning of the Act; that the employer was not a retail or service establishment, and entered judgment in the total sum of $1,-949.10, from which the employer has appealed.

The parties to the proceedings present the case here on the narrow question whether the employee is engaged in commerce, and if so whether the employer is a retail establishment within the exemption of the Act. However, the Wage and Hour Administrator has filed a brief amicus curiae in which it is argued that the employee is not only "engaged in commerce," as the trial court held, but that he is also "engaged in the production of goods for commerce" within the meaning of the Act.

At all times material to this controversy, the employer was engaged in the manufacture and distribution of electricity at Socorro, New Mexico, and the employee, as a plant engineer, operated the machinery which generated the electricity, all of which was transmitted over its distribution lines to a meter where it was measured, sold and delivered wholly within the State of New Mexico to the employer's 675 customers. Neither the employer nor the employee thereafter exercised any control over the electricity, and it was never transmitted across state lines for sale or use, however, eight of the employer's customers were engaged both in intrastate and interstate commerce, and they used the electricity which they purchased in the operation of their respective businesses.

The Atchison, Topeka & Santa Fe Railway Company purchased and consumed .44% of the total electrical energy manufactured, and .67% of the total sold by the employer to light its buildings and surrounding property at Socorro; to operate the crossing signal where Highway 85 crosses the Magdalena branch of its railroad, and to light the semaphore which is used to signal trains moving in interstate commerce. The Mountain States Telephone & Telegraph Company purchased and consumed .64% of the total electrical energy manufactured, and .85% of the total sold by the employer to light its buildings; to charge the storage battery which operates the switchboard used in long-distance telephone calls, and to operate the ringing machines and long line equipment of the American Telephone & Telegraph Company located at the Socorro office. The Socorro Municipal Airport, although not used as a commercial field, but as an emergency and auxiliary field, purchased and consumed approximately 1.20% of the total electricity manufactured and sold to light the communications' office, maintained by the C. A. A.; to light the field and beacon light which pointed the way for interstate planes; to operate radio sets for teletype machines, which by means of the American Telephone & Telegraph Company's facilities may be connected with other airports throughout the United States. The Post Office consumed energy for lighting its building and operating its cancelling machine, but the energy is purchased by the owner of the building and furnished under the terms of the lease on the building. The Railway Express Company, Western Union, and Santa Fe Trails Transportation, a bus company, all occupy space in the railroad station, and the Railway Company furnishes them electricity to light their offices or places of business. A fruit and produce company occupies space in a packing shed at the depot, from which it ships produce in interstate commerce, and consumes electrical energy in lighting its place of business. There is no practical way in which to determine what portion of the electrical energy consumed by the respective customers is devoted to intrastate as distinguished from interstate activities, but the total amount purchased and consumed by these companies is approximately 4% of the amount generated and sold.

■ The phrase "engaged in commerce," as used in the Fair Labor Standards Act to denote coverage, has come to have a well defined meaning under the adjudicated cases. It is now established beyond controversy that to be engaged in commerce within the meaning of that phrase, an employee must be actually engaged in the movement of commerce, or the services he performs must be so closely related thereto as to be for all practical purposes an essential part thereof. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538; Rucker v. First National Bank, 10 Cir., 138 F.2d 699, and Clyde v. Broderick, 10 Cir., 144 F.2d 348. And in that connection closeness depends upon the essentiality and indispensability of the particular work or services performed to the actual movement of commerce. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Pederson v. Del., Lack. & West. R. R., 229 U.S. 146, 33 S.Ct. 648, 57 L.Ed. 1125, Ann.Cas.1914C, 153; United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430. If a cessation of the services of the employee causes an interruption or interference with the free movement of commerce, it is ordinarily regarded as an essential and indispensable part thereof. See So. Pac. Co. v. Industrial Accident Commission, 251 U.S. 259, 40 S.Ct. 130, 64 L.Ed. 258, 10 A.L.R. 1181.

■ It has also been said and affirmed that although Congress did not intend to exert its full powers over interstate commerce, it did intend "to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce," and in determining whether an employee was engaged in commerce within the meaning of the definition, courts should

be guided by practical considerations. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 335, 87 L.Ed. 460; Overstreet v. North Shore Corp., supra; and Rucker v. First National Bank, supra.

The concept of coverage as embodied in the definition of the phrase "engaged in commerce" is borrowed from the adjudicated cases which define and delimit coverage under the phrase "employed in commerce" as used in the Federal Employers' Liability Act, 35 Stat. 65, 45 U.S.C.A. § 51. See Overstreet v. North Shore Corp., supra; McLeod v. Threlkeld, supra; Rucker v. First National Bank, supra; Rader v. Baltimore & O. R. Co., 7 Cir., 108 F.2d 980. But all the definitions of coverage, and legal interpretations thereof, do not solve the ultimate problem of applying the particular facts to the legal concepts of the movement of commerce.

Obviously, the employee in our case is not actually engaged in the movement of commerce, and the narrow question then is whether the services he performs are so closely related to the movement of commerce as to be an essential part of it. The question of essentiality and indispensability involves the process of exclusion and inclusion—a problem of drawing lines, and where the line should be drawn depends upon the application of these facts to the prescribed legal standards. In that respect precedent is not harmonious and is of value only in determining what has been included as essential and indispensable, and what has been excluded as too remote and tenuous. Walling v. Mutual Wholesale F. & S. Co., 8 Cir., 141 F.2d 331.

In Pedersen v. Delaware, Lack. & West. R. R., 229 U.S. 146, 33 S.Ct. 648, 649, 57 L.Ed. 1125, Ann.Cas.1914C, 153, it was held that an employee of a railroad company engaged in carrying bolts to be used by him in repairing a railroad bridge over which interstate trains passed was employed in interstate commerce, on the theory that tracks and bridges were indispensable instrumentalities of interstate commerce, and the work of repairing such instrumentalities while thus used was so closely related to such commerce as to be "in practice and legal contemplation a part of it." In Kinzell v. Chicago, M. & St. P. Ry. Co., 250 U. S. 130, 39 S.Ct. 412, 63 L.Ed. 893, it was held that an employee of a railroad company who operated a device used to push gravel away from the tracks in order to provide for the safe movement of inter-

state trains, was regarded as engaged in work necessary to the safe conduct of commerce, and one whose work had for its immediate purpose the furthering of the conduct of interstate commerce was "employed in commerce" within the meaning of the Federal Employers' Liability Act. In So. Pac. Co. v. Industrial Commission, 251 U.S. 259, 40 S.Ct. 130, 131, 64 L.Ed. 258, 10 A. L.R. 1181, a lineman engaged in the necessary work of wiping the insulator supporting a main wire in use at the time as a conductor of electricity which flowed from it through a transformer and thence along trolley wires, which moved railroad cars in interstate and intrastate commerce, was directly and immediately connected with interstate transportation and an essential part of it. The court said that "power is no less essential than tracks or bridges to the movement of cars." See also Phila. & Read. Ry. Co. v. Di Donato, 256 U.S. 327, 41 S.Ct. 516, 65 L.Ed. 955.

In Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656, a toll road and draw bridge constituted an integral part of the highway system over which moved interstate commerce. One employee raised the draw bridge for the passage of boats and lowered it for the resumption of traffic over the road; another employee was engaged in the maintenance and repair of the road and bridge thus used; a third employee sold and collected toll tickets from vehicles using the road and bridge in interstate commerce. Applying what it considered the practical test laid down in the above cases, the court held that the work of these employees was so closely related to interstate commerce as to be engaged in commerce within the meaning of the Fair Labor Standards Act. See also Overnight Motor v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; and Pederson v. Fitzgerald Const. Co., 318 U.S. 740, 63 S.Ct. 558, 87 L.Ed. 1119. However, in the more recent case of McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538, it was held that a cook who prepared and served meals to maintenance-of-way employees of an interstate railroad in pursuance of a contract between his employer and the railroad company, was not engaged in the movement of commerce within the meaning of the Fair Labor Standards Act, although the meals were prepared and served in cars which moved upon the tracks of the railroad company to points conveniently close to the work of the maintenance-of-way em-

ployees. In reaching that decision, the court expressly overruled some of the cases cited with approval in Overstreet v. North Shore Corp., supra, namely Phila. B. & W. R. R. Co. v. Smith, 250 U.S. 101, 39 S.Ct. 396, 63 L.Ed. 869 (see dissent by Mr. Justice Murphy), and it undoubtedly intended to restrict the concept of coverage under the phrase "engaged in commerce" to the movement of commerce. See Rucker v. First National Bank, supra. But it did not repudiate Overstreet v. North Shore Corp., supra; Overnight Motor v. Missel, supra; or Pederson v. Delaware Lack. & West. R. R., supra, rather it reaffirmed the doctrine that an employee is engaged in commerce if the work he performs is so closely related to its movement as to be considered an essential and indispensable part thereof. See Shanks v. Delaware L. & W. R. Co., 239 U.S. 556, 36 S.Ct. 188, 60 L.Ed. 436, L.R.A.1916C, 797; Chicago N.W. Ry. Co. v. Bolle, 284 U.S. 74, 52 S.Ct. 59, 76 L.Ed. 173; Chicago & E. I. R. Co. v. Commission, 284 U.S. 296, 52 S.Ct. 151, 76 L.Ed. 304, 77 A.L.R. 1367; and New York N. H. & H. R. Co. v. Bezue, 284 U.S. 415, 52 S.Ct. 205, 76 L.Ed. 370, 77 A.L.R. 1370.

■ The electrical energy purchased and consumed by the customers of the employer in this case was not used to supply the personal needs of their employees as was the food prepared by the cook in the McLeod case. Rather the electrical energy generated by the employee and used by the railroad company to operate its crossing signal and semaphore for the safe movement of interstate commerce; by the telephone and telegraph company to transmit its interstate messages; by the airport to guide airplanes while on their interstate journey; and by the post office, the express company, bus company and produce company in the furtherance of their interstate business, was certainly an integral and essential part of interstate commerce. When viewed in this light, the work and services performed by the employee in the generation of electricity become so related to the actual movement of commerce as to be considered an essential and indispensable part thereof, and without which it would be impeded and impaired. Schmidt v. Peoples Telephone Union, 8 Cir., 138 F.2d 13; Allen v. Arizona Power Corp., 7 Wage and Hour Reporter 395.

■ An effort is made to invoke the doctrine of de minimis non curat lex on the theory that the total amount of electricity actually used in interstate commerce, when compared to the total amount generated and sold by the employer, is trivial and inconsequential and should not be considered by the court in the determination of the question whether the services performed by the employee brought him within the coverage of the Act as one "engaged in commerce." It is true, of course, that the percentage of electricity used in interstate commerce is small, but it is not the volume or percentage of an employee's contribution to the movement of commerce which is the test of whether he is "engaged in commerce" within the meaning of the Act. If the services he performs are essential to the movement of commerce and not merely sporadic and isolated, he is engaged in commerce within the meaning of the Act. United States v. Darby, 312 U.S. 100, 123, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Walling v. Peoples Packing Co., 10 Cir., 132 F.2d 236; North Shore Corp. v. Barnett, 5 Cir., 143 F.2d 172; Sun Publishing Co. v. Walling, 6 Cir., 140 F.2d 445, 448; Schmidt v. Peoples Tele. Union, 8 Cir., 138 F.2d 13; Bracey v. Luray, 4 Cir., 138 F.2d 8, 11; Davis v. Goodman Lumber Co., 4 Cir., 133 F.2d 52; Strand v. Garden Valley Tele. Co., D.C., 51 F.Supp. 898; McKeown v. Southern Calif. Freight Forwarders, D.C., 52 F.Supp. 331, 333. Cf. National Labor Relations Board v. Fainblatt, 306 U.S. 601, 605, 59 S.Ct. 668, 83 L.Ed. 1014; Santa Cruz Co. v. Labor Board, 303 U.S. 453, 467, 58 S.Ct. 656, 82 L.Ed. 954; National Labor Relations Board v. J. G. Boswell Co., 9 Cir., 136 F.2d 585. The generation of electricity for use in the movement of interstate commerce was a part of the work-a-day duties of the employee, and his contribution in that respect was both consistent and continuous.

■ Having established his employment in commerce, the employee is entitled to the benefits of the Fair Labor Standards Act unless it is clearly shown that his employment falls within one of the exemptions carved from the general rule of coverage. Joseph v. Ray, 10 Cir., 139 F.2d 409. Section 13(a) (2), 29 U.S.C.A. § 213(a) (2), specifically exempts employees engaged in any retail or service establishment, the greater part of whose selling or servicing is in intrastate commerce. To come within the exemption the employees must not only render services, the greater part of which is in intrastate commerce, but they must

also be engaged in a "service establishment," and that term has been construed in the light of its Congressional history as applying to establishments which sell service instead of goods, typical of which are barber shops, beauty parlors, shoe shining parlors, clothes pressing shops, laundries, and automobile repair shops. Fleming v. A. B. Kirschbaum Co., 3 Cir., 124 F.2d 567, affirmed Arsenal Bldg. Corp. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Schmidt v. Peoples Tele. Union, 8 Cir., 138 F.2d 13; Sun Publishing Co. v. Walling, 6 Cir., 140 F.2d 445.

The specifically enumerated classes of exemptions from the Act negative any Congressional purpose to use the term "retail or service establishment" in a broad and loose sense. See Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460. Cf. Addison v. Holly Hill Fruit Products, 322 U.S. 607, 64 S.Ct. 1215. The term was not intended to include public utilities such as railroads, gas, electric, telephone and telegraph companies. Schmidt v. Peoples Tele. Union, supra; Sun Publishing Co. v. Walling, supra; Reynolds v. Salt River Valley Water Users Ass'n, 9 Cir., 143 F.2d 863. See Annot. 150 A.L.R. 100.

We conclude that a company engaged in the generation of electricity for sale to consumers who use it in the operation of their businesses such as these facts demonstrate, does not come within the exemption of the Act as a retail or service establishment.

The judgment is affirmed.