### CENTRAL MISSOURI TEL. CO. v. CONWELL.
### No. 13756.

United States Court of Appeals, Eighth Circuit.

Nov. 16, 1948.

John A. Morrison (of Morrison, Nugent, Berger, Hecker & Buck), of Kansas City, Mo., and John F. Baker, of Chicago, Ill., for appellant.

Robert L. Jackson, of Kansas City, Mo., for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought under the Fair Labor Standards Act, Title 29 U.S.C. A. § 201 et seq., to recover compensation for overtime. It is alleged in the complaint that the action is brought by plaintiff Lillie Conwell "as an employee of the defendant, and on behalf of Laura Pinkepank against the defendant." Two causes of action are comingled in the complaint, one in favor of Lillie Conwell and the other in favor of Laura Pinkepank. The complaint was filed January 21, 1947. The complaint alleges that from and after February 1, 1942, Lillie Conwell was employed by defendant as a night operator of the telephone exchange operated by defendant at Holden, Missouri, and that Laura Pinkepank was employed by defendant as a night operator of the telephone exchange operated by defendant at Sweet Springs, Missouri. It is then alleged that,

"From and after the date aforesaid until on or about September 1; 1946, Lillie Conwell and Laura Pinkepank, who will be hereafter referred to as plaintiffs, worked eleven (11) hours per day, six (6) days per week, each and every work week between the dates aforesaid, and that during all of said period of time the work, duties and details which they performed for and on be-half of the defendant were in interstate commerce and so closely connected to interstate commerce as to be a part thereof."

It is alleged that during the time mentioned Lillie Conwell worked a total of 2500 hours for which she was not paid time and a half for overtime, and that Laura Pinkepank worked 3000 hours for which she was not paid time and a half for overtime.

On June 23, 1947, defendant filed motion to dismiss the action on the ground that the complaint fails to state a claim against the defendant upon which relief can be granted in that it purports to be based upon the Fair Labor Standards Act as amended, whereby by virtue of a certain Act of Congress passed on May 14, 1947, known as the Portal-to-Portal Act of 1947, said action can not be maintained because the complaint fails to allege either an express provision of a written or non-written contract between employees and employer or a custom or practice in effect making the activity set forth in the complaint compensable, and further because the court does not have jurisdiction of the action by virtue of the terms of the Portal-to-Portal Act. The motion was denied and defendant then filed answer December 8, 1947. The answer admits that the parties named were employed by defendant as operators at the telephone exchanges alleged, admits that the defendant and the operators were engaged in interstate commerce, admits its corporate existence, and denies all other allegations. It further pleaded as an alternative defense that it employed plaintiffs as night operators in good faith and in reliance upon administrative regulations, orders and rulings issued and promulgated by the Wage and Hour Division of the United States Department of Labor, which constituted a bar to the action. It further alleged that the complaint fails to state a claim against defendant upon which relief can be granted on the same ground as specified in its motion to dismiss. It further pleaded that, "Plaintiffs are barred from maintaining such portion of this action as accrued more than two years prior to January 21, 1947, the date this action was instituted, by virtue of the Missouri Statute of Limitations relating to actions brought under the

Fair Labor Standards Act of 1938 as amended."

The action was tried before the court without a jury and the court found all the issues in favor of the plaintiffs except that it found that defendant had acted in good faith in compensating plaintiffs and assessed only overtime compensation without liquidated damages.

Defendant, in seeking reversal of the judgment, contends that: (1) the court erred in overruling its motion to dismiss plaintiffs' complaint for failure to set forth allegations in conformity with the Portal-to-Portal Act; (2) plaintiffs failed to prove a contract, custom or practice as a basis for additional compensation; (3) plaintiffs can not recover for time spent on the employer's premises if they did not perform work, even though they were available for work; (4) plaintiffs have failed to present evidence of sufficient definiteness to establish the number of hours for which they claim they are entitled to overtime compensation; (5) Laura Pinkepank should be denied recovery for work performed prior to January 7, 1946, because she first consented to be represented by Lillie Conwell by appearing at the trial on January 7, 1948, and the two year statute of limitations of the Portal-to-Portal Act applies; (6) defendant is exonerated from liability because of its reliance in good faith upon administrative rulings and interpretations; (7) The Missouri statute of limitations prevents recovery prior to January 21, 1945.

In support of its motion to dismiss the complaint defendant contended in the trial court and the argument is here renewed, that right of recovery is dependent upon the provisions of the so-called Portal-to-Portal Act. The Portal-to-Portal Act contains provision that no employer shall be subject to any liability under the Fair Labor Standards Act, or certain other Acts not here material, in any action on account of the failure of the employer to pay an employee minimum wages or overtime compensation for or on account of any activity engaged in prior to the date of the enactment of the Act, except an activity which was compensable by "an express provision of a written or non-written contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer", 29 U.S.C.A. § 252, or a custom or practice in effect at the time, covering such activity, not inconsistent with a written or non-written contract.

The Supreme Court in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, interpreted the Fair Labor Standards Act as requiring computation in the work week of time consumed in walking to work and other preliminary activities. This was the law under this Act as construed by the Supreme Court and was the occasion for the enactment of the so-called Portal-to-Portal Act. It had the effect of clarifying the Fair Labor Standards Act and of amending it after it had been interpreted by the Supreme Court. The Portal-to-Portal Act did not purport to repeal in toto or otherwise, the Fair Labor Standards Act, but, confessedly, it modifies that Act as it had been construed in the Mt. Clemens Pottery case.

Following the approval of the Portal-to-Portal Act, the Administrator of the Wage and Hour Division of the United States Department of Labor issued an interpretative bulletin in which it is stated:

"Sponsors of the legislation in both Houses of Congress asserted that it 'in no way repeals the minimum wage requirements and the overtime compensation requirements of the Fair Labor Standards Act,' that it 'protects the legitimate claims' under the act, and that one of the objectives of the sponsors was to 'preserve to the worker the rights he has gained under the Fair Labor Standards Act.' It would therefore appear that the Congress did not intend by the Portal Act to change the general rule that the remedial provisions of the Fair Labor Standards Act are to be given a liberal interpretation and exemptions therefrom are to be narrowly construed and limited to those who can meet the burden of showing that they come 'plainly and unmistakably within the terms and spirit' of such an exemption."

The President, in his message to Congress with reference to the extent of the provisions of this Act, among other things said:

"I am confident that the purpose of the main provisions of the Act is to eliminate the immense potential liabilities which have arisen as the result of the 'Portal-to-Portal' claims. It is not the purpose of the Act to permit violation of our fundamental wage and hour standards or to allow a lowering of these standards."

■ In the instant case there is no claim seeking to recover for time consumed in walking to work or other activities either before or after the normal working hours. Here the claim is that these employees actually worked many hours in excess of the forty hours permitted by the Fair Labor Standards Act, not for activities of a Portal-to-Portal nature, such as were involved in Anderson v. Mt. Clemens Pottery Company, supra, and we agree with the trial court that it was not the purpose of the Portal Act to destroy such claims.

Section 207 of the Fair Labor Standards Act provides that,

"No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce— * * * for a workweek longer than forty hours * * *, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

■ We are of the view that this provision of the Fair Labor Standards Act was neither repealed nor so modified as to make it necessary to plead, in an action to recover compensation for time actually devoted to the normal work for which the employee was employed, an express written contract or unwritten contract, or a practice or custom. Jackson v. Northwest Airlines, D.C. Minn., 76 F.Supp. 121. The court therefore had jurisdiction of the action and properly denied defendant's motion to dismiss.

The employees here involved were employed as night switchboard operators. They were on what is termed an eleven hour tour of duty, which required them to go on duty at nine o'clock in the evening and to remain there until eight o'clock the following morning. They were paid for an eight hour tour until 1943. The difference between the time compensated for and the eleven hours was designated as sleeping time and a cot was furnished by defendant and placed in a room near the switchboard so that the operator might utilize such time as her duties permitted in rest or sleep. In 1943 an increase in pay was requested and additional compensation was allowed by reducing the sleeping time. Thereafter Mrs. Conwell was paid for nine hours and Miss Pinkepank was paid for eight and one-half hours. The switchboards were located in buildings controlled by defendant, and were not in the homes of the operators. There was no change in the duties of these employees after the adoption of the Fair Labor Standards Act of 1938.

Defendant had about twenty-five exchanges in central Missouri. Sweet Springs has a population of about 1800 and between 600 and 700 telephone patrons. Holden is somewhat smaller in population and number of patrons. The switchboards operated by plaintiffs are known as drop boards. Whenever a call comes onto a board a small metallic disk-like device attached to the swichboard drops and exposes an apperture into which a plug is inserted to form the connection. Many of the patrons of each of the offices are rural subscribers and a number of such subscribers are on each line. Though ordinarily rural calls are not routed through the exchange, yet when a call is placed by a rural subscriber to another rural subscriber on the same line the drop to which the line is attached on the board falls and it requires the manual effort of the operator to replace it. Following electrical storms the drops on the board will often fall and the operator must replace them before the lines are again available. The result is that during the entire period that plaintiffs worked for defendant they were required to replace the drops as they fell at whatever time that might occur during their tour of duty. Several long distance lines were routed through each of the switchboards every night and these lines afforded long distance service to patrons of smaller communities where the switchboards were closed at early hours each night. These long distance lines

were in addition to the regular lines serving Sweet Springs and Holden. The plaintiffs were charged with the responsibility of making records of long distance calls. The number of calls through each of the exchanges varied greatly. The load, as it is called in the record, usually decreased considerably by eleven o'clock or midnight, and thereafter calls were infrequent. Often there were considerable periods of time when there were no calls, and other periods when calls were frequent, requiring constant attention to the board. Usually, after the ordinary peak load was passed, an automatic electric bell was turned on and the operator was permitted to leave the board. If a call came through the bell sounded, thus attracting the attention of the operator. The operators were not permitted to leave the premises or the room in which the switchboard was located between the time they went on duty at nine o'clock in the evening and the time their tour of duty ended at eight o'clock the following morning. Some nights the operators were able to get several hours of uninterrupted sleep, while other nights they were disturbed at frequent intervals and obtained very little sleep. In any event they were required to be in the exchange ready to serve. Not only were they in readiness but at least from time to time they rendered very considerable necessary service, for which they confessedly received no compensation. They were not there for the purpose of sleep nor for any purpose of their own, but for their employer's benefit.

■ Generally speaking, what constitutes working time is a question of fact depending upon the particular circumstances in each case, and it has been said that such question must be determined in accordance with common sense and the general concept of work or employment. Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123, 5 Cir., 135 F.2d 320, affirmed 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014. It is not possible to lay down any arbitrary rule as to whether time spent in waiting or even sleeping time is or is not working time. There are many attending circumstances to be taken into consideration, among them the number of consecutive hours the employee is subject to call without being required to perform active work, the extent to which he is free to engage in personal activities during periods of idleness, whether he is required to remain on or about the premises during such time, or whether he can leave word where he may be reached in the event of a call and is not required to remain in any particular place. These employees were required to be on the employer's premises, accessible to the switchboard, and on duty. They were charged with responsibility for the proper operation of the exchanges under their charge.

■ In Rokey v. Day & Zimmermann, 8 Cir., 157 F.2d 734, we held that the employees were not entitled to overtime compensation for rest periods. The employees in that case were watchmen. They were on duty for twenty-four consecutive hours on alternate days. They were paid for sixteen hours, from eight o'clock in the morning until midnight, and during the remaining hours they were to sleep in the facilities provided in the plant by the employer. In the event of a call to duty during that period they were paid for the time employed. During this eight hour rest period the employees were free to relax, read, play games, listen to the radio, or otherwise occupy their time. They were permitted to retire at anytime after ten o'clock but were subject to call "but such calls were infrequent. In both standby and emergency calls, there was on the average less than one call per three months period for each of the plaintiffs during rest periods. The number of such calls varied from thirteen in about two years for one of the plaintiffs, to no calls whatever in six months' for another. Pay was given for each of such emergency calls." The case is therefore readily distinguishable in its facts from the instant case. As this is a question of fact, the finding of the trial court is presumptively correct and should not be disturbed unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

■ We conclude that plaintiffs were on duty, performing compensable activities, during the entire eleven hours they spent at defendant's exchanges during the period involved in this action. Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.

Ed. 118; Missouri, K & T. R. Co. v. United States, 231 U.S. 112, 34 S.Ct. 26, 58 L.Ed. 144; Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124; Strand v. Garden Valley Tel. Co., D.C. Minn., 51 F. Supp. 898.

■ It is next contended that plaintiffs failed to present evidence of sufficient definiteness to establish the number of hours for which they were entitled to overtime compensation. It appears from the record that an audit was made of defendant's records and the trial court found that, "Defendant does not deny the correctness of the figures but does deny its liability. The audit shows that the amount of overtime compensation allegedly due plaintiff Conwell is $1,331.98. The amount allegedly due plaintiff Pinkepank is $1,121.97. These figures represent the difference between the compensation they received and compensation for the full eleven hours during which they were required to be present and ready to serve defendant's patrons." The contention of defendant in this regard seems to go rather to a question of law than to a question of fact, and we have in the previous discussion determined that question of law adversely to its contention.

■ Employee Laura Pinkepank did not file her written consent to become a party plaintiff to the action although she had given such authorization before the complaint was filed. The trial court held that Section 8 of the Portal-to-Portal Act was not applicable because Miss Pinkepank was named in the original complaint as a plaintiff. Section 8 of the Portal-to-Portal Act provides as to pending representative actions that the statute of limitations prescribed in 6(b) shall be applicable in actions commenced under the Fair Labor Standards Act prior to the date of the enactment, "to an individual claimant who has not been specifically named as a party plaintiff to the action prior to the expiration of one hundred twenty days after the date of the enactment of this Act." In other words, the statute is not applicable to such cases where the claimant has been named as a party plaintiff.

In the instant case Laura Pinkepank was in fact named as a plaintiff in the complaint, and the trial court so held. True, her name did not appear as a party plaintiff in the caption of the complaint, but in the body of the complaint it is specifically stated that the parties are plaintiffs, and the defendant in its answer refers to the parties, including Miss Pinkepank, as plaintiffs. Thus in paragraph 2 of the complaint it is alleged that, "The plaintiffs received telephone calls from outside the State of Missouri, the plaintiffs assisting in and conducting said interstate communication referred to." Again, in paragraph 3 it is alleged that, "Plaintiffs state that from February 1, 1942 to September 1, 1946, Lillie Conwell worked a total of 2500 hours, etc." In paragraph 4 it is alleged, "Plaintiffs state that compensation heretofore referred to is due and owing by the defendant to the plaintiffs, etc." The prayer of the complaint reads as follows: "Wherefore plaintiffs pray judgment against defendant for the sum of $9,100, together with their costs herein expended." Defendant's answer refers to the parties as plaintiffs, and the supersedeas bond given by defendant on appeal recites that in an action pending "between Lillie Conwell and Laura Pinkepank as plaintiffs, and Central Missouri Telephone Company as defendant, a judgment was entered, etc." In the absence of any authority to the contrary, we can not say that the trial court was in error in holding that Laura Pinkepank was named as a party plaintiff in the complaint.

■ It is contended that all of the claims sued for which accrued prior to January 21, 1945, are barred by the Missouri two-year statute of limitations. The statute relied upon is Missouri Revised Statutes, Sec. 1016, as amended by the Act of 1945, which so far as here material provides that,

"An action by an employee for the payment of unpaid minimum wages, unpaid overtime compensation or liquidated damages by reason of the nonpayment of minimum wages or overtime compensation, and for the recovery of any amount under and by virtue of the provisions of the Fair Labor Standards Act of 1938 and amendments thereto, said act being an act of Congress, shall be brought within two years after the cause accrued."

This was embodied in an amendment to Section 1016 in 1945.

Prior to this amendment actions for minimum wages and overtime compensation would have been within the provisions of Section 1014 of the Missouri Statutes, which fixes a five year period. The amendment of the Missouri statute relied upon was manifestly intended to single out actions arising under the Fair Labor Standards Act because at the time of its adoption there were no Missouri laws limiting the hours of labor or fixing rates of pay with the exception of an act limiting the hours of labor of female employees. However, the statute can not be said to be directed solely against rights created by federal laws. The amendment above quoted contains no time limit within which to bring action on causes that had already accrued and should be held to look only to the future. If intended to be effective retroactively, then a reasonable time must be allowed within which to bring accrued causes of action. The court therefore correctly ruled that the statute could not be invoked as a bar to the plaintiffs' claims. By constitutional provision in Missouri it is provided that except in certain emergency legislation, no law shall become effective until ninety days after adjournment of the session at which it is enacted. If this should be considered as time within which accrued causes of action might be brought, it would, we think, be unreasonable. McGahey v. Virginia, 135 U.S. 662, 10 S.Ct. 972, 34 L.Ed. 304. We are of the view that the court correctly held that Section 1016, Missouri R.S.A. 1939, as amended in 1945, is not applicable to the cause of action pleaded in this case.

It is next urged that defendant should not be held liable in this action because it had in good faith relied upon administrative regulations, orders, rulings, approvals and interpretations issued, in fixing the hours of work and the rates of pay of its employees. We think the trial court correctly held that Bulletin No. 13, referred to in the record, did not describe the conditions under which plaintiffs were working at their respective stations, and hence, defendant was not exonerated from liability. This contention of defendant was based upon the testimony of the manager to the effect that it was the custom of the industry to follow the practice of paying switchboard operators only for the period of time they were employed on switchboards in small communities, and the fact that the Wage and Hour Division had inspected the offices of defendant and made no complaint about any violation of the law. We do not think this testimony required the trial court to find that defendant was exonerated from liability for the overtime involved in this action.

The judgment appealed from is therefore affirmed.